**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00374-CV**
_____

**FC FESTIVALS, LLC, Appellant**

**V.**

**QUALITY EVENT FLOORING SYSTEMS, LLC, Appellee**

**On Appeal from the 136th District Court**
**Jefferson County, Texas**
**Trial Cause No. D-200,644**

**MEMORANDUM OPINION**

May a company charge a purchase to an account holder's corporate account when the individual who makes the purchase tells the company selling the goods that the goods are not being acquired for the account holder? And if the company charges the account holder for the purchase while knowing the account holder was not making the purchase, does the account holder's credit agreement apply to the transaction? If the account holder is also a nonresident of this State, may a forum

selection clause in the account holder's credit agreement require the account holder to defend a lawsuit the seller filed against the account holder in the state designated in the clause?

The trial court resolved these questions in a Texas company's favor and denied an Iowa company's special appearance. In its special appearance, the Iowa company claimed it never purchased the goods that were the subject of the Texas company's suit. And in the hearing, the Iowa company established that neither it nor an agent acting on its behalf acquired the goods for the Iowa company's account. Moreover, the Iowa company established the Texas company knew the individual who acquired the goods was not purchasing them for the Iowa company's account. Nevertheless, the trial court held the forum selection clause in a credit agreement the Iowa company signed allowed the court to exercise jurisdiction over the Iowa company and to resolve the Texas company's claim seeking to recover payment for the goods the Texas company delivered to the individual who signed contracts renting the goods the individual subsequently used.

We conclude the forum selection clause does not apply because the Texas company knew the goods were not purchased on the Iowa company's account. And since the record contains no other basis justifying the trial court's ruling, we reverse

the trial court's order denying the special appearance and dismiss the Iowa company from the suit.

Background

In September 2017, Quality Event Flooring Systems, LLC (Quality Flooring) sued Basis Live, LLC (Basis Live), FC Festivals, LLC (Festivals), Dave DeWaard, and Dave Arndt alleging they failed to pay the balance they owed Quality Flooring under two floor-rental contracts, dated April 2017. After Festivals learned of the suit, it filed a special appearance. In the special appearance, Festivals asserted that it never rented the floors for the concerts that were the subject of Quality Flooring's claims, did no business with Quality Flooring, and never signed any contracts with Quality Flooring that required it or Quality Flooring to perform any part of the contract in Texas.

In September 2018, the trial court conducted a hearing on Festivals' special appearance. The evidence from the hearing shows that Quality Flooring sells and rents portable floors for concerts and special events. In late March or early April 2017, DeWaard, an Iowa resident, spoke to Ben Grennell, an employee of Quality Flooring, about the prospect of renting portable floors for two concerts, scheduled to occur in late April 2017 in Florida and Alabama. Over the next several days, Grennell, working from Quality Flooring's Texas office, and DeWaard, a resident

3

of Iowa, exchanged a series of emails about the floors. The emails discuss the terms under which Quality Flooring would consider renting the floors.

In the first of these emails, dated April 3, 2017, Grennell asked DeWaard to clarify two items the two of them had discussed by phone, (1) how many square feet of flooring would DeWaard need for the concerts, and (2) "what company name and address do you want me to put this contract under?" In response, DeWaard sent Grennell an email advising him that he needed "[a]bout 80 thousand total" for "Basis Live LLC[,] [B]ox 243[,] Forest [C]ity[,] IA[.]"

In response to DeWaard's email, Grennell informed DeWaard what Quality Flooring would charge to rent, install, and remove the two floors. A week later, Grennell sent DeWaard an email informing him that Quality Flooring's chief operating officer had informed him that Quality Flooring would "have to do the contract for the flooring under [Festivals] because that is what your credit check is under. Sorry for all the paper work." Grennell's reference to a credit check relates to a March 2017 credit application that Festivals signed with Quality Mat Company of North Dakota, LLC (Quality North Dakota). The March 2017 credit agreement arose from discussions DeWaard had with Quality Flooring about Festivals' desire to rent floors for a concert in Iowa. In March 2017, Arndt, Festivals' manager, signed a credit application with Quality North Dakota contemplating that Festivals might

4

need some wooden mats for a festival that it conducts in Iowa. On the credit application he signed for Festivals, Arndt listed DeWaard as one of the individuals who could order goods for Festivals on Festivals' account.

On April 11, 2017, Grennell sent DeWaard an email advising DeWaard to "fill out the first page of the credit application regarding the Basis Live information [because] [o]ur CFO needs that for the credit application." The day after that, DeWaard sent Grennell an email advising Grennell to send Basis Live's credit application to him and to an individual named Melissa so they could "turn it around asap[.]"

During the second week of April 2017, Grennell emailed DeWaard and advised he had just gotten out of a meeting with Quality Flooring's officers. Grennell's email states that Quality Flooring would provide the portable floors for the two concerts in Florida and Alabama after DeWaard sent Quality Flooring a $25,000 deposit and agreed to pay any remaining balance owed to Quality Flooring following the events. In the same email, Grennell told Dewaard the contracts for the two concerts "are not under the credit application you sent in for the wood mats[,]" which referred back to DeWaard's discussion with Grennell about the prospect that Festivals might rent wood mats for the festival in Iowa.

Later that day, DeWaard signed two contracts to rent the floors for the Florida and Alabama concerts. DeWaard signed his name to the rental contracts to pay for the floors. On the line showing who the contracts were addressed to, Quality Flooring wrote: "Basis Live LLC/FC Festivals LLC[.]" After Quality Flooring forwarded the contracts to DeWaard, he signed them but did not strike Festivals' name from the address. And DeWaard did not represent whether he signed the contracts individually, for Basis Live, for Festivals, or for everyone whose name Quality Flooring put on the line showing the entities to whom Quality Flooring addressed the agreements.

Excerpts from a deposition the parties obtained during discovery from DeWaard were also before the trial court before the court ruled on Festivals' special appearance. In his deposition, DeWaard testified he called Grennell after receiving the contracts and told him he could not sign the contracts "because FC Festivals has zero to do with [the two deals]." DeWaard also testified he spoke to two other individuals in Quality Flooring's chain of command about the fact that Festivals was not the entity renting the floors. DeWaard explained he sent Quality Flooring his personal check for $25,000 based on Quality Flooring's request for a down payment toward the cost of renting the floors. Quality Flooring does not dispute that it credited DeWaard's down payment against the damages it sought to recover in its suit.

6

DeWaard also testified he never told anyone at Quality Flooring that Basis Live and Festivals were the same companies.

Quality Flooring asked the trial court to consider three additional documents to decide whether DeWaard was acting as Festivals' actual or apparent agent when he rented the floors. The first consists of excerpts showing the discussion the court had with the parties during a scheduling hearing. The excerpts from the scheduling hearing reflect that Quality Flooring's attorney represented to the trial court that Quality Flooring could make Grennell available for a deposition because he still works for Quality Flooring but works from its Florida office. The evidence before the trial court, however, contains no evidence from Grennell (other than his emails) addressing whether DeWaard told him that Festivals was not involved in the contracts DeWaard signed to rent the floors.

The second document is a copy of a March 2017 credit application signed by Arndt on Festivals' behalf. The credit application reflects that Festivals asked Quality North Dakota to set up an account authorizing Festivals to charge up to $50,000 on its account.[1] Arndt listed DeWaard as an individual who Festivals authorized to charge goods purchased or rented by Festivals to Festivals' account.

_____

[1] Festivals and Quality Flooring dispute whether Festivals' credit application with Quality North Dakota authorized Quality Flooring to charge goods or services to its account. The evidence before the trial court shows that Quality North Dakota

7

The last of the documents is an affidavit signed by Joe E. Penland, Sr., the president of Quality Mat Company. In his affidavit, Penland explains that Quality Mat Company is the parent company of Quality North Dakota. Penland also states Quality Flooring used Quality North Dakota's credit agreement form by mistake because the entities that are parties to transactions "know the other parties with whom they are doing business[.]" Penland's affidavit then states that Quality North Dakota has no interest in the March 2017 credit application signed by Festivals, but that if it did, Quality North Dakota was assigning its interest in the credit agreement to Quality Flooring, effective retroactively to March 2017.

## Standard of Review

The parties' dispute arises from the two contracts signed by DeWaard renting portable floors for concerts in Alabama and Florida. In its special appearance, Festivals challenged Quality Flooring's claim that DeWaard acted with either actual or apparent authority for Festivals when he rented the floors.

---

is a subsidiary of Quality Mat Company, and that Quality Flooring is a division of Quality Mat Company. We resolve the appeal based on the evidence relevant to whether Festivals gave DeWaard the actual or apparent authority to rent the floors that were the subject of the suit. Thus, we need not decide whether the evidence also raises issues of material fact on Quality Flooring's claim to reform the credit agreement based on its theory of mutual mistake.

We review a trial court's ruling on a defendant's special appearance using a *de novo* standard.[2] In resolving questions arising from a defendant's special appearance, the plaintiff and the defendant bear shifting burdens of proof.[3] As the plaintiff, Quality Flooring had an initial burden to file pleadings alleging facts sufficient to show Festivals could be sued by Quality Flooring on the claims it filed in Texas.[4] Initially, and given the burden shifting rules that apply to special appearances, we focus on the allegations in Quality Flooring's petition because the facts alleged in the petition must, if true, show the defendant could be sued in Texas.[5]

In its petition, Quality Flooring relied on the credit agreement Festivals signed with Quality North Dakota to claim it could sue Festivals in Texas. The credit agreement, however, applies only to "actions relating to any manner to any goods sold to [Festivals.]" And, as Festivals points out, Quality Flooring is not a named

---

[2] *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

[3] *See Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010).

[4] *See BMC Software*, 83 S.W.3d at 793; *see also* Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041-.045 (West 2015) (the statute generally referred to by Texas courts as the long-arm statute).

[5] *See Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009) ("Under the Texas long-arm statute, the plaintiff has the initial burden to plead sufficient allegations to confer jurisdiction.").

party to the Festivals/Quality North Dakota credit agreement. That said, Quality Flooring claimed the court should interpret the credit agreement as an agreement between Festivals and Quality Flooring because when Festivals opened its account, Quality Flooring inadvertently sent Festivals the wrong form.[6]

If a forum selection clause has been properly applied by a trial court to a dispute, the usual due process and minimum contacts standards that apply to whether nonresident defendants are subject to being sued in Texas do not apply to the trial court's ruling on a nonresident's special appearance.[7] In such cases, the question is whether, based on the evidence before the trial court, the forum selection clause applies to the dispute?[8]

---

[6] Quality Flooring relies on Penland's affidavit to assert that it raised fact issues on its claim of mutual mistake. The credit agreement, however, states "[t]his agreement contains all of the understandings between [Quality North Dakota] and [Festivals] concerning any extensions of credit . . . [and] [a]ny Purchase Orders subsequently received by [Quality North Dakota] that differ from the terms shall be deemed void[.]" Here, we resolve Festivals' appeal by applying the general principles of agency to the evidence before the trial court. We expressly do not decide whether the evidence before the trial court raised an issue of fact on Quality Flooring's claim of mutual mistake.

[7] *See Guam Indus. Servs., Inc. v. Dresser-Rand Co.*, 514 S.W.3d 828, 833 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

[8] *Id.*

Analysis

*Forum Selection Clause*

In response to Quality Flooring's suit, Festivals filed verified pleadings denying the truth of Quality Flooring's claims. For instance, Festivals claimed that DeWaard did not rent the floors while acting as its actual or apparent agent, it denied it owed Quality Flooring for the charges that were the subject of Quality Flooring's suit, and it claimed it was not a party to the floor-rental contracts signed by DeWaard. Festivals also asserted that it never exercised its credit with Quality North Dakota to rent or purchase any goods or services from Quality Flooring.

Given the pleadings, the burden of proof shifted to Quality Flooring to present evidence establishing either that DeWaard signed the two floor-rental contracts while acting as Festivals' agent, or that Festivals, by its actions, cloaked DeWaard with the apparent authority to act for Festivals on the contracts renting the floors.[9] In this case, the trial court did not file findings of fact or conclusions of law to support its ruling. Therefore, we imply all facts the implied findings support if the implied findings are supported by the evidence before the court.[10]

---

[9] *See Kelly*, 301 S.W.3d at 659 (noting that after the defendant negates plaintiff's allegations over jurisdiction, "[t]he plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction").

The record contains evidence addressing whether DeWaard had either the actual or apparent authority to sign the floor-rental contracts as Festivals' agent. For instance, DeWaard testified in his deposition that he told Grennell (and others with Quality Flooring) before Quality Flooring provided any goods or services under the rental contracts that Festivals was not involved in the projects involving the rented floors. Quality Flooring's evidence, a copy of the credit agreement Festivals signed with Quality North Dakota, merely shows that Festivals authorized DeWaard— among others—to act for it when purchasing or renting goods for Festivals' account. It did not give him carte blanche to rent floors individually or to charge goods and services not used for Festivals' benefit to Festivals' account.

In response to Festivals' evidence, Quality Flooring failed to present any evidence to show that Grennell was unaware or misled by Festivals or by DeWaard about whether DeWaard was acting for Basis Live when renting the portable floors. And Festivals' evidence shows that Grennell knew the identity of the entity to whom it rented the floors. For instance, the chain of emails between Grennell and DeWaard addressing the floor-rental contracts show that Grennell knew DeWaard was not acting for Festivals when he rented the floors. The negotiations leading up to the contracts show that Quality Flooring asked Basis Live for a credit application to

---

[10] *See BMC Software*, 83 S.W.3d at 795.

consider extending credit to Basis Live so it could rent the floors. When Basis Live did not qualify for an open account, Quality Flooring chose to rent the floors to DeWaard in return for a check for $25,000 drawn on DeWaard's personal account. And Quality Flooring chose to put Festivals' and Basis Live's names on the rental contracts even though it knew Festivals was not involved in either deal. Quality Flooring produced no evidence to meet its burden to rebut DeWaard's testimony or the chain of emails between DeWaard and Grennell.

There is also no evidence in the record rebutting DeWaard's testimony that he told several of Quality Flooring's employees that he was not acting for Festivals in renting the floors. Thus, even if the evidence raised a fact issue on Quality Flooring's claim of mutual mistake, nothing in the credit agreement authorized Quality Flooring to charge goods or services to Festivals when it knew the goods and services were not being purchased on Festivals' account.[11] Even though Quality Flooring addressed the floor-rental contracts jointly to "Basis Live LLC/FC Festivals LLC," that act cannot be attributed to Festivals, as only the nonresident defendant's "contacts with the forum are relevant, not the unilateral activity of another party or a third person."[12]

---

[11] *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

[12] *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007).

13

At this stage of the proceedings, the evidence before the trial court failed to raise a fact issue about whether DeWaard was Festivals' agent when he rented the floors. The evidence further established that Festivals did not cloak DeWaard with the apparent authority to rent the floors for the concerts in Alabama and Florida. Whether a principal is shown to have cloaked an individual with apparent authority is based on the doctrine of estoppel.[13]

Claims based on allegations of apparent authority apply only when the principal knowingly permitted the agent to hold himself out to others as having authority to act on behalf of the principal or if the principal acted with such a lack of ordinary care that it "clothe[d] an agent with the indicia of authority[.]"[14] In deciding whether the evidence raises an issue of material fact on apparent authority claims, "only the conduct of the principal is relevant" in deciding whether the principal cloaked an individual with the apparent authority to act on the principal's behalf.[15] Here, Quality Flooring failed to meet its burden of producing evidence to

---

[13] *Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 550 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (explaining that "apparent authority is created by written or spoken words or conduct by the principal to a third party").

[14] *Ames v. Great S. Bank*, 672 S.W.2d 447, 450 (Tex. 1984).

[15] *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007).

demonstrate that an issue of material fact exists at this stage of the proceedings on its claim that Festivals cloaked DeWaard with the apparent authority to rent the floors that are the subject of its breach of contract claims.[16]

We conclude the forum selection clause does not apply because the dispute does not concern goods purchased or rented by Festivals.

*Specific and General Jurisdiction*

We must also rule out any other theories the pleadings and evidence might support before overturning the trial court's ruling.[17] Here, Quality Flooring never pleaded that Festivals was incorporated in Texas or that it had enough contacts with Texas to make Festivals "at home" in Texas. Consequently, no theory of general jurisdiction applies to Quality Flooring's claims.[18] The trial court's ruling also cannot be sustained on a theory of specific jurisdiction. Quality Flooring's pleadings fail to allege facts to show the rental contracts signed by DeWaard were based on

---

[16] *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790-91 (Tex. 2005) (explaining that "[p]ersonal jurisdiction is a question of law for the court, even if it requires resolving questions of fact").

[17] *BMC Software*, 83 S.W.3d at 794 (explaining that if the trial court's conclusion is incorrect but the trial court rendered a proper judgment, its erroneous conclusion does not require the judgment to be reversed).

[18] *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

15

Festivals' contacts with Quality Flooring in Texas.[19] On this record, neither the pleadings, nor the evidence establishes that a substantial connection exists between Festivals' contacts with Texas and the operative facts of Quality Flooring's claims.[20]

For the reasons explained above, we conclude the trial court's ruling on the special appearance must be reversed.

Conclusion

We hold the trial court erred in denying Festivals' special appearance. We reverse the trial court's order denying Festivals' special appearance and render the judgment the trial court should have rendered.[21] We grant Festivals' special appearance and dismiss it from Trial Court Cause Number D-200,644 for lack of jurisdiction.

REVERSED AND RENDERED.

---

[19] *See Kelly*, 301 S.W.3d at 659 (explaining that the defendant can prevail on a special appearance by showing that even if it is true the defendant had some contact with the forum, "the claims do not arise from the contacts").

[20] *See id.* at 658 & n.4 ("Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading."); *see also* Tex. R. Civ. P. 120a(3) (instructing the trial court that it "shall determine the special appearance on the basis of the pleadings").

[21] Tex. R. App. P. 43.2(c) (authorizing the courts of appeal to "render the judgment that the trial court should have rendered").

_____
HOLLIS HORTON
Justice

Submitted on January 3, 2019
Opinion Delivered September 19, 2019

Before Kreger, Horton, and Johnson, JJ.

17