**Opinion issued September 29, 2022**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-22-00256-CV**

———————————

**ELEANOR O. SLANE, Appellant**

**V.**

**BOB BOROCHOFF, Appellee**

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-69655**

**MEMORANDUM OPINION**

In this interlocutory appeal,[1] appellant, Eleanor O. Slane, challenges the trial

court's order denying her special appearance in the breach-of-contract claim brought

against her by appellee, Bob Borochoff. In her sole issue, Slane contends that

---

[1]    *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7).

Borochoff's jurisdictional allegations are insufficient to invoke personal jurisdiction over her and that the jurisdictional evidence negates his allegations because he relies on a forum-selection clause in an agreement that she did not sign.

We affirm.

## Background

In the record, Borochoff represents that he is a sophisticated business owner, having "been the owner of many businesses over a four-decade career," including a national special events company and "the largest catering company in Houston." In 2003, Borochoff organized New American Strategies, Inc. ("NASI")[2] "to work with the Texas General Land Office on the Emergency Pilot Program for Economic Revitalization." Borochoff, who was the sole owner and chief executive officer of NASI, hired Slane's husband, Dan,[3] as chief operating officer. In 2008, Slane and Dan legally separated.

Eleven years later, in 2019, Borochoff sold his 100% interest in NASI to Slane and 9780 Management, Ltd. ("9780"), a company owned by Dan's brother, Charles.[4] On October 23, 2019, Borochoff, Slane, and 9780 executed a "Stock Purchase Agreement" for the "Sale and Purchase of 100% of the Stock of [NASI]" (the

---

[2]     NASI is not a party to this appeal.

[3]     Dan is not a party to this appeal.

[4]     Charles and 9780 are not parties to this appeal.

2

"Agreement"). Pursuant to the Agreement, Borochoff sold 75% of his shares to Slane and 25% to 9780 for an aggregate purchase price of $1,000,000, which Slane and 9780 agreed to pay Borochoff by wire transfer at closing. In addition, Slane and 9780 agreed to pay Borochoff "Additional Consideration" and to maintain his insurance, as follows:

> **Section 1.03 Additional Consideration**. Buyer [Slane and 9780] shall make the following additional payments and provide the following additional consideration to Seller [Borochoff] following the Closing (the "Additional Consideration"):
>
> (a)    The Company is a party, as the "Provider," to that certain Contract for Economic Revitalization for Small Business Pilot Program services under the Community Development Block Grant - Disaster Recovery program for Hurricane Harvey with the General Land Office of the State of Texas . . . (the "Contract").
>
> (b)    Buyer agrees to pay Seller additional consideration of $200,000, payable in cash when the Company has received aggregate fees of $7,500,000 under the Contract. In the event the Company or its successors perform additional work under the Contract beyond the current Not to Exceed fee amount of $10,000,000, Buyer agrees to cause the Company or any such successor to pay Seller one-third of the Company's net profits from any such additional work as and when received by the Company or such successor.
>
> (c)    Following the Closing, Seller will remain an employee of the Company at his current compensation and benefits through November 30, 2019 . . . . Thereafter, during the term of the Contract, Seller will serve as a consultant to the Company with respect to its activities under the Contract for base compensation of $1.00 per year, and Buyer will cause the Company to pay for Seller's full family continuation coverage for Seller's family under its group health plan. . . .

Also at closing, Borochoff executed a "Stock Power" transfer, transferring 750 shares of the Common Stock of NASI to "Eleanor O. Slane."

Subsequently, in October 2021, Borochoff sued Slane and 9780, alleging that they had breached the terms of the Agreement. In his petition, as amended, Borochoff alleged that Slane and 9780 had subcontracted all of NASI's rights and responsibilities under its contract with the State of Texas to an economic disaster firm in Louisiana and that they had formed a new entity, New American Economic Development Strategies, LLC, which was "designed to emulate and duplicate the business of NASI." He asserted that both companies had common management, owners, and employees; hired many of the same vendors; "sometimes paid invoices for each other"; and "moved cash back and forth on a regular basis." He alleged that, "NASI appear[ed] to have received over $17.9 million in fees under the Agreement." Thus, pursuant to Article 1, section 1.03(b) of the Agreement, Slane and 9780 owed him $200,000, plus his share of additional profits. He further alleged that Slane and 9780 had failed to continue his family's health insurance coverage as agreed under section 1.03(c).

With respect to the trial court's personal jurisdiction over Slane, Borochoff alleged in his petition, as amended, that Slane is an Ohio resident, but that

> [j]urisdiction is proper as the parties, the cause(s) of action and the amount in controversy are all cognizable by the Harris County District Courts. The parties agreed to jurisdiction and venue in Harris County, Texas.

Slane filed a special appearance, asserting that the Texas trial court lacked personal jurisdiction over her because Borochoff did not meet his initial burden to plead sufficient allegations to bring her within the provisions of the Texas long-arm statute and because the jurisdictional evidence negated his allegations. She asserted that exercising jurisdiction over her would deny her due process, offending traditional notions of fair play and substantial justice.

Slane argued that Borochoff's allegations fell short of the type and degree of contacts necessary to establish specific or general jurisdiction over her because he did not allege any facts establishing that she had contacts with Texas.

In addition, Slane asserted that the jurisdictional evidence negated general jurisdiction over her. Specifically, she testified in her attached affidavit that she was domiciled in Ohio; had not resided in Texas for over sixty years; did not own any real property interests in Texas; did not maintain any businesses, facilities, offices, post office boxes, or telephone listings in Texas; and did not "regularly engage in activities in which she purposefully avail[ed] herself of the benefits and protections of Texas laws."

Slane argued that the jurisdictional evidence negated specific jurisdiction over her because, as she testified in her affidavit, she "did not sign" the Agreement, or "authorize any person to sign on [her] behalf"; the "signature on the Agreement appearing over the name 'Eleanor O. Slane' [was] not in her hand"; and she believed

that Dan had signed her name to the Agreement, without her knowledge or permission. Subject to her special appearance, Slane filed a verified denial, denying that she "executed, or authorized the execution of, the Agreement" and asserting that any signature on the Agreement attributable to her was forged.

In his response, Borochoff argued that the jurisdictional evidence established that Slane consented to personal jurisdiction when she signed the Agreement containing a valid and enforceable forum-selection clause affixing jurisdiction in Harris County, Texas. He asserted that the Agreement, which is dated October 23, 2019, identified Slane as "Buyer" and directed that all notices be delivered to "Buyer Eleanor O. Slane" at her address—which is the same address at which she was served with the instant lawsuit. He noted that Slane and Dan had been separated since 2008 and that Dan did not live at that address. Borochoff asserted that his bank records showed that Slane wired funds to him at closing from her own bank account and that she admitted in discovery that she had wired money to him in October 2019. In addition, he asserted that he transferred 75% of his shares in NASI to Slane at closing, and she admitted in discovery that she is a shareholder in NASI. In support, Borochoff attached his affidavit, a copy of the Agreement, Stock Transfer, discovery, bank records, and emails.

Borochoff asserted that the trial court was required to enforce the forum-selection clause because Slane did not overcome her "heavy burden" to clearly show

6

that enforcement would be unreasonable or unjust, that the clause was invalid for fraud or overreaching, that enforcement contravened strong public policy of Texas, or that Texas would be "seriously inconvenient" for trial. Borochoff further asserted that Slane was required to assert her claim that a forgery had occurred as an affirmative defense and to prove her claim at trial. He asserted that, because the matter raised a fact issue that went to the merits of the case, it was not properly resolved in a special appearance.

The trial court denied Slane's special appearance. The trial court did not enter findings of fact and conclusions of law.

## Personal Jurisdiction

In her sole issue, Slane argues that the trial court erred in denying her special appearance because Borochoff failed to meet his initial burden to present jurisdictional allegations sufficient to invoke personal jurisdiction over her and because the jurisdictional evidence negates his allegations.

### A.    Standard of Review

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law, and we review the trial court's determination of a special appearance de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). However, a trial court frequently must resolve fact questions before deciding the jurisdictional question. *Id.* In a special appearance, the trial

7

court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Guam Indus. Servs., Inc. v. Dresser-Rand Co.*, 514 S.W.3d 828, 832 (Tex. App.—Houston [1st Dist.] 2017, no pet.). "We do not disturb a trial court's resolution of conflicting evidence that turns on the credibility or weight of the evidence." *Id.* (internal quotations omitted). When, as here, the trial court does not issue findings of fact and conclusions of law with its ruling on a special appearance, we imply all facts necessary to support the judgment that are supported by the evidence. *M&F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017). We affirm the trial court's ruling on any legal theory finding support in the evidence. *Guam Indus. Servs.*, 514 S.W.3d at 832.

## B.    Applicable Legal Principles

Generally, a court may assert personal jurisdiction over a nonresident defendant only if the Texas long-arm statute and due process requirements of the Fourteenth Amendment to the United States Constitution are satisfied. *See* U.S. CONST. amend. XIV, § 1; TEX. CIV. PRAC. & REM. CODE § 17.042; *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226–27 (Tex. 1991). The Texas long-arm statute allows a court to exercise personal jurisdiction over a nonresident defendant who "does business" in Texas. TEX. CIV. PRAC. & REM. CODE § 17.042. This broad language allows the trial court's

jurisdiction to "reach as far as the federal constitutional requirements of due process will allow." *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010).

The United States Constitution allows a state court to assert personal jurisdiction over a nonresident defendant only if she has some minimum, purposeful contacts with the state and if the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *Dawson-Austin v. Austin*, 968 S.W.2d 319, 326 (Tex. 1998). A nonresident has sufficient contacts with a state to confer personal jurisdiction if she has purposefully availed herself of the privileges and benefits of conducting business in the state. *Guardian Royal*, 815 S.W.2d at 226.

Personal jurisdiction is waivable, however, and a party may agree to a forum's jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985). In a commercial context, as here, "parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction." *Id.* Personal jurisdiction is a "legal right protecting the individual," not a limitation on the power of a court. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703–05 (1982). Thus, a party may choose to bargain away that right. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–94 (1991) (noting that forum selection may benefit both parties through economies of certainty and limiting fora). Our role is not to "protect parties from their own agreements." *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 810–11 (Tex. 2012).

9

Accordingly, although our review of a trial court's ruling on a special appearance typically requires an analysis of whether the defendant has purposefully established minimum contacts with the forum, such is unnecessary when the defendant has contractually consented to jurisdiction in a particular forum. *See In re Fisher*, 433 S.W.3d 523, 532 (Tex. 2014) ("[A] contractual 'consent-to-jurisdiction clause' subjects a party to personal jurisdiction, making an analysis of that party's contacts with the forum for personal jurisdiction purposes unnecessary."); *Tri–State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.*, 184 S.W.3d 242, 248 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("If a party signs a contract with a forum selection clause, then that party has either consented to personal jurisdiction or waived the requirements for personal jurisdiction in that forum."); *see also* TEX. R. CIV. P. 120a(3). Instead, our review focuses on whether the trial court erred in enforcing, or declining to enforce, the forum-selection clause. *See Tri–State*, 184 S.W.3d at 247.

We review a trial court's ruling on the validity and enforceability of a forum-selection clause for an abuse of discretion. *CNOOC Se. Asia Ltd. v. Paladin Res. (SUNDA) Ltd.*, 222 S.W.3d 889, 894 (Tex. App.—Dallas 2007, pet. denied). Forum-selection clauses are "prima facie valid" and should be enforced unless the party opposing enforcement carries her "heavy burden" to show that enforcement would be unreasonable. *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10, 17

10

(1972); *see Rieder v. Woods*, 603 S.W.3d 86, 93 (Tex. 2020); *Tri–State Bldg*., 184 S.W.3d at 248. The party opposing enforcement must clearly show that (1) enforcement would be unreasonable or unjust; (2) the clause is invalid because of fraud or overreaching; (3) enforcement would contravene a strong public policy of the forum where the suit was brought; or (4) the contractually selected forum would be "seriously inconvenient" for trial. *See Rieder*, 603 S.W.3d at 93.

Because forum-selection clauses are "creatures of contract," we apply ordinary principles of contract interpretation in our review. *Guam Indus. Servs.*, 514 S.W.3d at 833. Our primary goal is to give effect to the parties' intent as written. *Phx. Network Techs. v. Neon Sys*., 177 S.W.3d 605, 615 (Tex. App.—Houston [1st Dist.] 2005, no pet.). We give terms their "plain, ordinary, and generally accepted meaning unless the contract itself shows them to be used in a technical or different sense." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). We read the provision "in its entirety, striving to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative." *Sw. Intelecom, Inc. v. Hotel Networks, Corp*., 997 S.W.2d, 324–25 (Tex. App.—Austin 1999, pet. denied).

11

## C.  Forum-Selection Clause

### 1.  *Jurisdictional Allegations*

Slane asserts that Borochoff did not meet his initial burden to plead sufficient jurisdictional allegations to bring her within the Texas long-arm statute. *See* TEX. CIV. PRAC. & REM. CODE § 17.042; *Guardian Royal*, 815 S.W.2d at 226.

Borochoff was not required, however, to allege that Slane committed acts or conducted business in Texas because he pleaded that Slane consented to personal jurisdiction in Texas when she executed the Agreement containing the forum-selection clause. *See Tri–State Bldg.*, 184 S.W.3d at 248 ("If a party signs a contract with a forum selection clause, then that party has either consented to personal jurisdiction or waived the requirements for personal jurisdiction in that forum."). Thus, Borochoff met his initial burden. *See id.*; *see also Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (holding that courts liberally construe pleadings in favor of pleader when determining whether sufficient facts alleged to confer jurisdiction); *see, e.g.*, *Henry v. Fin. Cas. & Sur. Inc.*, No. 01-13-00672-CV, 2014 WL 2767394, at *3 (Tex. App.—Houston [1st Dist.] June 17, 2014, no pet.) (mem. op.) (holding that plaintiff met initial burden by alleging that defendant consented to jurisdiction in forum-selection clause).

## 2. *Jurisdictional Evidence*

Slane argues that the jurisdictional evidence negates personal jurisdiction over her because she did not sign the Agreement containing the forum-selection clause, on which Borochoff relies. In essence, she asserts that the clause should not be enforced because it is invalid on the basis of fraud, namely, because her signature was forged. *See Rieder*, 603 S.W.3d at 93.

The terms of the Agreement include the following forum-selection clause:

> **Section 6.08     Governing Law; Submission to Jurisdiction.** All matters arising out of or relating to this Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction). *Any legal suit, action, proceeding, or dispute arising out of or related to this Agreement*, the other Transaction Documents, or the transactions contemplated hereby or thereby *may be instituted in* the federal courts of the United States of America or *the courts of the State of Texas in each case located in the city of Houston and county of Harris, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, proceeding, or dispute*.

(Emphasis added.) Thus, as emphasized, the parties agreed that "any" legal action arising out of, or related to, the Agreement "may be instituted" in the courts of Harris County, Texas. Borochoff filed the instant suit in Harris County. The forum-selection clause in the Agreement is prima facie valid and enforceable unless Slane met her "heavy burden" to make a "strong showing" that the clause should be set aside. *See Rieder*, 603 S.W.3d at 93; *Tri–State Bldg.*, 184 S.W.3d at 248; *Phx. Network Techs.*, 177 S.W.3d at 621.

13

In support of her assertion that she did not sign the Agreement, Slane presented her affidavit, in which she testified:

9. I did not sign, or authorize any person to sign on my behalf, the [Agreement] dated October 23, 2019 . . . upon which [Borochoff's] claims are founded.

10. The signature on the Agreement appearing over the name "Eleanor O. Slane" is not in my hand. I believe that Daniel Slane signed my name to the [A]greement, without my knowledge and without my permission.

11. Daniel Slane was my husband from whom I was legally separated as of March 1, 2008.

12. Neither Daniel Slane nor any other person had my authorization to execute the Agreement on my behalf.

To controvert Slane's evidence, Borochoff presented a copy of the Agreement, which contains a signature purporting to be that of "Eleanor O. Slane." The Agreement identifies Borochoff as "Seller" and "Eleanor O. Slane" as "Buyer" and specifies that all notices and communications thereunder were to be delivered to "Buyer Eleanor O. Slane" at, what she does not dispute, was her address in Westerville, Ohio. Borochoff notes that this is the same address at which she was served with the instant lawsuit. He also noted that Dan did not live at that address.

The terms of the Agreement specify that, at closing, "Buyer shall deliver the Purchase Price to Seller by wire transfer," "in accordance with the wire transfer instructions set forth on Schedule 1.02." Schedule 1.02 directs the transfer to an account number at Chase Bank held in Borochoff's name. Borochoff presented a copy of a bank statement from Chase Bank, listing him as the account owner, and

14

showing a transfer of $300,000.00 into his account on October 28, 2019 from an account held by "Eleanor O. Shane Westerville, OH." Borochoff also presented Slane's answers to discovery, in which she admitted that she wired money to Borochoff in October 2019. Borochoff also presented a copy of an October 23, 2019 "Stock Transfer," in which he transferred 750 shares of NASI stock to "Eleanor O. Slane." Borochoff also presented Slane's answers to discovery, in which she admitted that she possesses an ownership interest in NASI.

Because the trial court did not issue findings of fact and conclusions of law, we must imply all facts necessary to support the trial court's order that are supported by the evidence and affirm on any legal theory finding support in the evidence. *M&F Worldwide*, 512 S.W.3d at 885.

In sum, the trial court had before it the Agreement containing a signature purporting to be that of "Eleanor O. Slane." The trial court could compare the signature on the Agreement against Slane's signatures on her affidavit and answers to discovery. The Agreement also identified Slane as "Buyer" and identified her address in Westerville, Ohio, for all communications under the Agreement, which was the same address at which she was served with the instant lawsuit. The trial court also had before it a copy of Borochoff's bank statement, showing a transfer of $300,000.00 into his account on October 28, 2019 from an account held by "Eleanor O. Shane Westerville, OH," and Slane's answers to discovery, in which she admitted

15

that she wired money to Borochoff in October 2019. Further, the trial court had the October 23, 2019 "Stock Transfer," in which Borochoff transferred 750 shares of NASI stock to "Eleanor O. Slane," and Slane's answers to discovery, in which she admitted that she possesses an ownership interest in NASI.

Although Slane presented affidavit testimony denying that she signed the Agreement or authorized anyone to sign it on her behalf, such testimony presented a fact question for the trial court, the resolution of which was dependent upon the trial court's evaluation of her credibility. *See Pritchett v. Gold's Gym Franchising, LLC*, No. 05-13-00464-CV, 2014 WL 465450, at *6 (Tex. App.—Dallas Feb. 4, 2014, pet. denied) (mem. op.) (noting that, although defendant testified in his affidavit that he did not sign guaranty that incorporated forum-selection clause, whether his apparent signature was authentic or forged presented fact question for trial court, determination of which depended on its evaluation of credibility). It is within the sole province of the fact-finder to resolve conflicts in the evidence. *See Guam Indus. Servs.*, 514 S.W.3d at 832. We will not disturb a trial court's resolution of conflicting evidence that turns on credibility or on the weight of the evidence. *See id.* We conclude that, based on the conflicting jurisdictional evidence presented, the trial court could have reasonably found Slane's affidavit testimony denying that she signed the Agreement not credible. *See id.*; *Pritchett*, 2014 WL 465450, at *6.

Because Slane did not establish that the trial court's enforcement of the forum-selection clause was unreasonable, we hold that the trial court did not err in denying Slane's special appearance on the ground she advances. *See Rieder*, 603 S.W.3d at 93; *Marchand*, 83 S.W.3d at 794; *Tri–State*, 184 S.W.3d at 247.

We overrule Slane's sole issue.

## Conclusion

We affirm the trial court's order denying Slane's special appearance.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Landau and Hightower.