**GUAM INDUSTRIAL SERVICES, INC. d/b/a Guam Shipyard, Appellant**

v.

**DRESSER–RAND COMPANY, Appellee**

**NO. 01–15–00842–CV**

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued January 19, 2017

Fred Dietrich, THE DIETRICH LAW FIRM, Houston, TX, for appellant.

Kyle C. Reeb, Lauren B. Harris, Porter Hedges LLP, Houston, Texas, for appellee.

Panel consists of Justices Keyes, Brown, and Huddle.

## OPINION ON REHEARING

Rebeca Huddle, Justice

Appellee Dresser–Rand Company has filed a motion for rehearing and a motion for en banc reconsideration of our July 21, 2016 opinion and judgment. We grant the motion for rehearing, withdraw our opinion and judgment of July 21, 2016, and issue this opinion and a new judgment in their stead. Accordingly, we dismiss the motion for en banc reconsideration as moot. *See, e.g., Brookshire Bros. v. Smith*, 176 S.W.3d 30, 41 (Tex. App.–Houston [1st Dist.] 2005, pet. denied).

This is an accelerated interlocutory appeal from an order denying Guam Industrial Services, Inc. d/b/a Guam Shipyard's special appearance. Dresser–Rand sued the Shipyard in district court in Houston for breach of contract and other claims after the Shipyard failed to pay Dresser–Rand for repair and restoration work it had performed on a vessel. Dresser–Rand contended that the trial court had jurisdiction over its suit because the parties' contract included an arbitration provision that operated as a forum-selection clause by which the Shipyard consented to personal jurisdiction in Houston. The Shipyard filed

a special appearance contending that the trial court lacked jurisdiction, which the trial court denied. In its sole issue on appeal, the Shipyard contends that the trial court erred by denying the special appearance. We reverse the trial court's order, render judgment granting the special appearance, and remand for further proceedings consistent with this opinion.

## Background

According to Dresser–Rand's petition, in January 2014, the Shipyard asked it to perform repair and restoration work on a vessel. Dresser–Rand prepared a series of proposals with quotes, which provided that its terms and conditions form D–R100 would govern its work. After receiving and accepting the proposals, the Shipyard issued a series of purchase orders for work totaling nearly $500,000. Dresser–Rand completed the contracted-for work and invoiced the Shipyard, but the Shipyard refused to pay the invoices, citing financial troubles.

In January 2015, Dresser–Rand sued the Shipyard in state district court in Houston for breach of contract, sworn account, quantum meruit, promissory estoppel, and violations of the federal Prompt Pay Act. Dresser–Rand did not allege that the Shipyard had sufficient contacts with Texas to satisfy a specific or general jurisdiction analysis. Instead, Dresser–Rand contended that the trial court had jurisdiction over its claims against the Shipyard because the Shipyard had consented to personal jurisdiction in Houston in the arbitration provision that was part of form D–R100. It provided in relevant part:

14. ARBITRATION

Whenever a dispute arises between the parties, relating to or arising out of this Agreement, the parties agree to attempt

to have their senior management amicably settle the matter. The parties agree that any dispute that is not settled in a timely manner (whether for breach of contract, torts, products liability, payments or otherwise) shall unless mutually agreed otherwise, be resolved by binding arbitration pursuant the [sic] Commercial Dispute Resolution Procedures of the American Arbitration Association ("AAA").... Judgment upon the award may be entered in any court having jurisdiction. ... The site of such arbitration shall be either in Buffalo, New York or Houston, Texas.

Dresser–Rand argued that, by agreeing to this arbitration provision, the Shipyard consented to be sued in Houston.

When the Shipyard failed to timely answer, Dresser–Rand moved for a default judgment and set a hearing for March 20, 2015. On that day, the Shipyard filed a special appearance and original answer, contending that the trial court did not have personal jurisdiction over it. The Shipyard filed an amended special appearance in May, and an amended motion in support of its special appearance in August.

In its August motion, the Shipyard argued that the parties had not entered into a valid contract that included an arbitration provision. The Shipyard also argued that even if Dresser–Rand could show the existence of a valid contract containing an arbitration provision, that provision did not constitute consent to personal jurisdiction in Houston for Dresser–Rand's suit. The Shipyard argued that the trial court lacked jurisdiction over it because Dresser–Rand conceded that the Shipyard did not have sufficient contacts with Texas to support the assertion of specific or general jurisdiction,[1] and the arbitration provision did

---

1. Dresser–Rand's brief states, "Dresser–Rand has never asserted general or specific jurisdiction as a basis for jurisdiction. Instead, the

not constitute consent to Dresser–Rand's suit.

In response, Dresser–Rand contended that the parties did enter a valid contract which included the terms in D–R100. Dresser–Rand adduced the purchase orders that the Shipyard issued based upon Dresser–Rand's proposals and the Shipyard's correspondence accepting the proposals. Dresser–Rand also contended that the arbitration provision operated as a forum-selection clause by which the Shipyard agreed to be sued in Houston for any claim.

The trial court held a hearing on the special appearance on September 11, 2015. The Shipyard took the position that, even if a contract was formed, the arbitration provision constituted consent at most to arbitration in Houston. On September 14, 2015, the trial court denied the special appearance. The Shipyard filed a timely notice of accelerated appeal on October 1, 2015.

On October 14, 2015, while this appeal was pending, Dresser–Rand moved to compel arbitration. The Shipyard responded that Dresser–Rand had waived its right to compel arbitration by filing suit against the Shipyard without mention of arbitration and by resisting the Shipyard's special appearance. On October 30, 2015, the trial court granted the motion to compel arbitration. On the Shipyard's motion, we stayed the order compelling arbitration pending our determination of whether the trial court erred by denying the special appearance.

## Discussion

In its sole issue, the Shipyard contends that the trial court erred by denying its special appearance.

parties' agreement to arbitrate in Texas estab-

### A. Standard of Review

■■■■ Whether a court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). A plaintiff bears the burden of pleading allegations that bring a nonresident defendant within the provisions of the Texas long-arm statute. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002). A nonresident defendant challenging the court's exercise of personal jurisdiction through a special appearance carries the burden of negating those allegations. *Id.*; *Glattly v. CMS Viron Corp.*, 177 S.W.3d 438, 446 (Tex. App.–Houston [1st Dist.] 2005, no pet.).

■■■■ The trial court must frequently resolve fact questions before deciding the jurisdictional question. *BMC Software*, 83 S.W.3d at 794. In a special appearance, the trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Leesboro Corp. v. Hendrickson*, 322 S.W.3d 922, 926 (Tex. App.–Austin 2010, no pet.). We do not "disturb a trial court's resolution of conflicting evidence that turns on the credibility or weight of the evidence." *Ennis v. Loiseau*, 164 S.W.3d 698, 706 (Tex. App.–Austin 2005, no pet.).

■■■■ When, as in this case, a trial court does not issue findings of fact or conclusions of law, we imply all relevant facts necessary to support the judgment if the evidence supports them. *Moncrief Oil*, 414 S.W.3d at 150. We will affirm the trial court's ruling on any legal theory that finds support in the record. *Dukatt v. Dukatt*, 355 S.W.3d 231, 237 (Tex. App.–Dallas 2011, pet. denied).

lishes jurisdiction here."

## B. Applicable Law

■ Typically, review of a ruling on a special appearance requires an analysis of whether a defendant has purposefully established minimum contacts with Texas, giving rise to either specific or general jurisdiction over the defendant, and whether the assertion of jurisdiction comports with fair play and substantial justice. *See, e.g., Henkel v. Emjo Invs., Ltd.*, 480 S.W.3d 1, 5 (Tex. App.–Houston [1st Dist.] 2016, no pet.). However, if a party contractually consents to jurisdiction in a particular forum, then the due-process and minimum-contacts analysis is unnecessary. *See In re Fisher*, 433 S.W.3d 523, 532 (Tex. 2014) ("[A] contractual 'consent-to-jurisdiction clause' subjects a party to personal jurisdiction, making an analysis of that party's contacts with the forum for personal jurisdiction purposes unnecessary."); *Tri–State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.*, 184 S.W.3d 242, 248 (Tex. App.–Houston [1st Dist.] 2005, no pet.) ("If a party signs a contract with a forum selection clause, then that party has either consented to personal jurisdiction or waived the requirements for personal jurisdiction in that forum.") (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14, 105 S.Ct. 2174, 2182 n.14, 85 L.Ed.2d 528 (1985)). Instead, the review focuses on whether the trial court properly enforced, or declined to enforce, the forum-selection clause. *See Tri–State*, 184 S.W.3d at 247–48. We review a trial court's decision whether to enforce a forum-selection clause for an abuse of discretion, except when our review involves contractual interpretation of the forum-selection clause, for which we employ a de novo standard of review. *Brown v. Mesa Distribs., Inc.*, 414 S.W.3d 279, 284 (Tex. App.–Houston [1st Dist.] 2013, no pet.); *Phx. Network Techs. (Europe) Ltd. v. Neon Sys.*, Inc., 177 S.W.3d 605, 610 (Tex. App.–Houston [1st Dist.] 2005, no pet.).

■ An arbitration agreement is a type of forum-selection clause. *See In re AutoNation, Inc.*, 228 S.W.3d 663, 668 (Tex. 2007) (citing *In re AIU Ins. Co.*, 148 S.W.3d 109, 115 (Tex. 2004)); *see also Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1974) (contractual agreement to arbitrate before a specified tribunal is, "in effect, a specialized kind of forum-selection clause"). Forum–selection clauses are contractual arrangements whereby parties agree in advance to submit their disputes for resolution within a particular jurisdiction. *See Burger King*, 471 U.S. at 472 n. 14, 105 S.Ct. at 2182 n.14; *see also Phx. Network Techs.*, 177 S.W.3d at 611 ("A forum-selection clause is a creature of contract."). Before enforcing a forum-selection clause, a court must determine whether the clause applies to the claims asserted in the lawsuit. *Deep Water Slender Wells, Ltd. v. Shell Int'l Expl. & Prod., Inc.*, 234 S.W.3d 679, 687–88 (Tex. App.–Houston [14th Dist.] 2007, pet. denied) (citing *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 221–22 (5th Cir. 1998)). This assessment involves a "common-sense examination of the claims and the forum-selection clause to determine if the clause covers the claims." *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 677 (Tex. 2009) (per curiam).

■ Because forum-selection clauses are creatures of contract, we apply ordinary principles of contract interpretation in our review. *See Phx. Network Techs.*, 177 S.W.3d at 615; *Sw. Intelecom, Inc. v. Hotel Networks Corp.*, 997 S.W.2d 322, 324–25 (Tex. App.–Austin 1999, pet. denied). In construing the clause, our goal is to ascertain the true intent of the parties as written in the agreement. *Sw. Intelecom, Inc.*, 997 S.W.2d at 324. Thus, we give terms their plain, ordinary, and gen-

erally accepted meaning unless the contract shows otherwise. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005).

## C. Analysis

The Shipyard raises four arguments in support of its issue that the trial court erred in denying its special appearance: (1) it did not consent to personal jurisdiction in Houston, (2) there are insufficient contacts to support the assertion of specific jurisdiction over the Shipyard, (3) there are insufficient contacts to support the assertion of general jurisdiction over the Shipyard, and (4) the assertion of personal jurisdiction over the Shipyard would not comport with traditional notions of fair play and substantial justice. Dresser–Rand concedes that the Shipyard lacks sufficient contacts with Texas to support the assertion of general or specific jurisdiction. Thus, our analysis of the Shipyard's appeal focuses on a single issue: whether the Shipyard contractually consented to suit in Houston.[2]

The Fifth Circuit recently addressed this precise issue in *International Energy Ventures Management, L.L.C. v. United*, 818 F.3d 193 (5th Cir. 2016). International Energy contracted to provide consulting services to United Energy Group, Limited, and United Energy failed to pay for the consulting services it received. *Id.* at 198. The parties executed a supplemental agreement in which United Energy acknowledged that it had not paid for the services rendered. *Id.* When United Energy continued to withhold payment, International Energy sued in Texas state court for breach of contract, promissory estoppel, quantum meruit, and fraud. *Id.*

United Energy removed the case to federal district court and moved to dismiss for lack of personal jurisdiction, arguing that it did not have sufficient contacts with Texas to support the assertion of personal jurisdiction over it. *Id.* International Energy responded that United Energy had consented to personal jurisdiction for suit in Texas because the supplemental agreement contained an arbitration agreement in which the parties agreed that any controversies between the parties would be settled by arbitration in Texas. *Id.* at 211. The district court granted the motion to dismiss and International Energy appealed. *Id.* at 210.

On appeal, the Fifth Circuit acknowledged that the parties' supplemental agreement included an arbitration agreement which provided that any controversies would be settled by arbitration in Texas. *See id.* at 211. However, the Fifth Circuit rejected International Energy's argument that the arbitration agreement constituted consent to the adjudication of claims on the merits in Texas courts. *Id.* at 211–12. The Fifth Circuit held: "When a party agrees to arbitrate in a particular state, via explicit or implicit consent, the district courts of the agreed-upon state may exercise personal jurisdiction over the

---

**2.** Dresser–Rand suggests that it is unclear whether we have jurisdiction to consider the enforceability of the forum-selection clause in our review of the denial of the special appearance. It is undisputed that we have jurisdiction to consider an appeal from a denial of a special appearance. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7) (permitting interlocutory appeal from denial of special appearance). Dresser–Rand cites only one case that concluded that the enforceability of a forum-se- lection clause was not reviewable on interlocutory appeal, *Prosperous Maritime Corp. v. Farwah*, 189 S.W.3d 389 (Tex. App.—Beaumont 2006, no pet.). In that case, the argument regarding the forum-selection clause was not raised as part of a special appearance or any other motion that is reviewable under section 51.014 of the Civil Practice and Remedies Code. *See id.* at 394. *Prosperous Maritime* is therefore inapposite.

parties for the limited purpose of compelling arbitration." *Id.* at 212 (quoting *Armstrong v. Assocs. Int'l Holdings Corp.*, 242 Fed.Appx. 955, 957 (5th Cir. 2007) (unpublished) (per curiam)).

Thus, the Fifth Circuit concluded that United Energy's "agreement to arbitrate in Texas does not necessarily constitute consent to the personal jurisdiction of Texas courts to adjudicate its claims in the first instance" unless personal jurisdiction existed under the minimum-contacts and due-process analyses. *See id.* Because an arbitration agreement specifying a particular forum constitutes consent to jurisdiction "for the *limited* purpose of compelling arbitration," and International Energy's suit sought adjudication of its claims on the merits, the Fifth Circuit affirmed the district court's dismissal of the suit. *Id.* at 212–13 (emphasis added).

Other federal courts have similarly concluded that an arbitration agreement does not constitute consent to suit in a forum for claims not pursued in arbitration. *See, e.g., Foster v. Device Partners Int'l, LLC,* No. C 12–02279, 2012 WL 6115618, at *4–5 (N.D. Cal. Nov. 21, 2012) (arbitration provision specifying that all disputes would be resolved by arbitration in San Francisco did not constitute contractual consent to personal jurisdiction in San Francisco for suit seeking adjudication of claims on the merits); *Mariac Shipping Co., Ltd. v. Meta Corp., N.V.,* No. 05 Civ. 2224(LAK), 2006 WL 89939, at *3 (S.D.N.Y. Jan. 12, 2006) ("While an agreement to arbitrate in a given venue at least arguably constitutes a consent to personal jurisdiction in that venue for the purpose of enforcing the agreement to arbitrate, this consent goes no farther than proceedings relating to enforcement of the arbitration agreement." (quotation and citation omitted)); *cf. St. Paul Fire & Marine Ins. Co. v. Courtney*

*Enters., Inc.,* 270 F.3d 621, 624 (8th Cir. 2001) (arbitration agreement specifying particular forum constituted consent to personal jurisdiction in that forum for purposes of compelling arbitration). Federal cases addressing issues of personal jurisdiction and arbitration may be treated as persuasive authority by Texas courts. *See Penrod Drilling Corp. v. Williams,* 868 S.W.2d 294, 296 (Tex. 1993).

■ Following these authorities and applying ordinary principles of contract interpretation, we conclude that the arbitration provision at issue here does not constitute consent to personal jurisdiction in Houston for lawsuits that seek adjudication of claims on the merits.[3] The arbitration provision provides:

14. ARBITRATION

Whenever a dispute arises between the parties, relating to or arising out of this Agreement, the parties agree to attempt to have their senior management amicably settle the matter. The parties agree that any dispute that is not settled in a timely manner (whether for breach of contract, torts, products liability, payments or otherwise) shall unless mutually agreed otherwise, be resolved by binding arbitration pursuant the [sic] Commercial Dispute Resolution Procedures of the American Arbitration Association ("AAA"). For any claims less than $100,000 the matter shall be heard by one arbitrator appointed by the AAA in accordance with its rules. For any claim in excess of $100,000, the matter shall be heard by a panel of three arbitrators appointed by the AAA in accordance with its rules. In rendering its decision the arbitrator or arbitrators shall not expand or restrict any of the Party's respective rights or obligations beyond those provided for in this Agree-

---

**3.** For purposes of our analysis, we assume

without deciding that a valid contract exists.

ment. In addition, the party prevailing at the arbitration shall be awarded that proportion of its reasonable costs and expense (including attorney's fees) that it actually incurred in arbitrating the matter. Judgment upon the award may be entered in any court having jurisdiction. The parties shall cooperate in providing reasonable disclosure of relevant documents. The site of such arbitration shall be either in Buffalo, New York or Houston, Texas.

Thus, under the terms of the arbitration provision, the Shipyard consented to have "any dispute . . . resolved by binding arbitration . . . in Buffalo, New York or Houston, Texas."

Nothing in the arbitration provision constitutes consent to suit in Houston for claims unrelated to compelling arbitration or confirming an arbitration award. To the contrary, the provision provides that "any dispute . . . shall . . . be resolved by binding arbitration," which evinces an intent to resolve disputes in arbitration, and not in litigation. *Sw. Intelecom, Inc.*, 997 S.W.2d at 324 (in construing forum-selection clause, court is to ascertain true intent of parties as written in agreement). The only reference to a court proceeding in the arbitration provision is the statement that "[j]udgment upon the [arbitration] award may be entered in any court having jurisdiction." In short, the arbitration provision supports, at most, a conclusion that the Shipyard agreed to be sued in Houston for matters related to arbitration, such as a suit to compel arbitration or confirm an arbitration award. *See Valence Operating Co.*, 164 S.W.3d at 662 (in construing contractual language, courts give terms their plain, ordinary, and generally accepted meaning unless contract shows otherwise); *see, e.g., Int'l Energy*, 818 F.3d at 212 ("When a party agrees to arbitrate in a particular state, via explicit or implicit consent, the district courts of the agreed-upon

state may exercise personal jurisdiction over the parties for the limited purpose of compelling arbitration."); *cf. Digital Generation, Inc. v. Boring*, 869 F.Supp.2d 761, 770 (N.D. Tex. 2012) (employment contract's agreement to arbitrate in Texas gave district court jurisdiction over petition for injunctive relief related to arbitration filed against former employee for violating contract's non-compete clause).

At the time of the special-appearance hearing, Dresser–Rand's petition included claims for breach of contract, sworn account, quantum meruit, promissory estoppel, and violations of the federal Prompt Pay Act. The petition made no mention of arbitration. At the special-appearance hearing, Dresser–Rand told the trial court that it had intentionally chosen litigation as opposed to arbitration, and that it would file an arbitration proceeding only if the trial court granted the special appearance and dismissed the lawsuit. Because Dresser–Rand was not seeking arbitration at the time of the special-appearance hearing and the claims it asserted were unrelated to arbitration, the arbitration provision did not confer personal jurisdiction over the Shipyard. Moreover, Dresser–Rand conceded that the Shipyard did not have sufficient contacts with Texas to support the assertion of specific or general jurisdiction under the Texas long-arm statute. *See BMC Software*, 83 S.W.3d at 793 (plaintiff bears burden of pleading allegations that bring non-resident defendant within provisions of Texas long-arm statute). Accordingly, the trial court erred in denying the Shipyard's special appearance. *See Int'l Energy*, 818 F.3d at 211–12; *see also In re Int'l Profit Assocs., Inc.*, 274 S.W.3d at 677 (court should engage in "common-sense examination of the claims and the forum-selection clause to determine if the clause covers the claims"); *Deep Water*, 234 S.W.3d at 687–88 (before enforcing a fo-

rum-selection clause, a court must determine whether clause applies to claims asserted in lawsuit).

▪▪▪▪▪ Dresser–Rand urges us to take judicial notice of the fact that the trial court granted its motion to compel arbitration after this appeal was filed. Dresser–Rand argues that the trial court had jurisdiction to compel arbitration and therefore did not err in denying the special appearance. Importantly, however, Dresser–Rand sought arbitration only after the trial court denied the special appearance.[4] In the special-appearance context, the pleadings "frame the jurisdictional dispute" and the defendant bears the burden to negate only those bases for jurisdiction that are apparent from the pleadings on file at the time the special appearance is heard. *See Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 & n.4 (Tex. 2010) ("Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading."). It is well-settled that in reviewing a ruling on a special appearance, we may review only those pleadings on file at the time of the special appearance hearing and may not consider pleadings that were filed after the hearing. *See* Tex. R. Civ. P. 120a(3) (trial court "shall determine the special appearance on the basis of the pleadings"); *Wellness Wireless, Inc. v. Vita*, No. 01–12–00500–CV, 2013 WL 978270, at *5 (Tex. App.–Houston [1st Dist.] Mar. 12, 2013, no pet.) (mem. op.) (Rule 120a(3) limits review of special appearance decision to pleadings on file at time of special appearance hearing); *Botter v. Am. Dental Ass'n*, 124 S.W.3d 856, 860 n.1 (Tex. App.–Austin 2003, no pet.) (trial court did not err in refusing to consider amended petition filed

after special appearance hearing and appellate court would not consider amended petition in its review); *Frank A. Smith Sales, Inc. v. Atl. Aero, Inc.*, 31 S.W.3d 742, 747 (Tex. App.–Corpus Christi 2000, no pet.) ("The meaning of the term 'pleadings' [in Rule 120a(3)] must be limited at least so as to exclude matters not filed prior to the special appearance hearing."). Therefore, the trial court's grant of the motion to compel arbitration, which was filed after the special appearance ruling was made and appealed, cannot cure its error in denying the special appearance. *See* Tex. R. Civ. P. 120a(3); *Kelly*, 301 S.W.3d at 658 & n.4; *Wellness Wireless*, 2013 WL 978270, at *5; *Botter*, 124 S.W.3d at 860 n.1; *Frank A. Smith Sales, Inc.*, 31 S.W.3d at 747.

In sum, the Shipyard did not consent to personal jurisdiction in Houston for suits unrelated to arbitration. Dresser–Rand's lawsuit made no mention of arbitration at the time of the special-appearance hearing. Accordingly, we hold that the trial court erred by denying the special appearance. *See Int'l Energy*, 818 F.3d at 211–12.

We sustain the Shipyard's sole issue.

Although the trial court's arbitration order did not cure its error in denying the special appearance, the arbitration order was entered while this interlocutory appeal was pending and while the proceedings in the trial court were not stayed. The Shipyard subsequently sought a stay of the order pending the resolution of this appeal, which we granted, but it did not appeal the arbitration order. Therefore, as the trial court retained jurisdiction to refer the case to arbitration, proceedings were not stayed at the time arbitration was ordered and initiated, and the merits of the arbitration

---

4. Indeed, at the hearing on the special appearance, Dresser–Rand told the trial court that it would seek arbitration only if the special appearance was granted and the suit dismissed.

order are not before us, the parties are free to proceed with the arbitration proceedings.

## Conclusion

We reverse the trial court's order, render judgment granting the special appearance, and remand for further proceedings consistent with this opinion.