**Opinion issued December 19, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-23-00880-CV**

———————————

**BLACK BAYOU OPERATING, LLC AND
STRATA GP, LLC, Appellants**

**V.**

**STRATA ENERGY HOLDINGS, LLC AND
BURTONVIC CAPITAL, LLC, Appellees**

**On Appeal from the 127th District Court
Harris County, Texas
Trial Court Case No. 2022-60547**

**MEMORANDUM OPINION**

In this interlocutory appeal,[1] appellants, Black Bayou Operating, LLC ("Black

Bayou") and Strata GP, LLC ("Strata GP"), challenge the trial court's order granting

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7).

the special appearance filed by appellees, Strata Energy Holdings, LLC ("Strata Energy Holdings") and Burtonvic Capital, LLC ("Burtonvic"), after Black Bayou filed cross-claims and Strata GP filed a plea in intervention against appellees for breach of contract, conspiracy, aiding and abetting, and for declaratory relief. In two issues, Black Bayou and Strata GP, LLC contend that the trial court erred in granting the special appearance.

We affirm.

## Background

The primary lawsuit in this case was brought by PEL Exploration 2022, LLC ("PEL") against Black Bayou, which was the contract operator for certain oil and gas properties acquired by PEL from Strata Energy Holdings and its affiliates. In its first amended petition and application for temporary injunction, PEL added claims against Strata Energy Holdings and Burtonvic.

PEL alleged that pursuant to a purchase and sale agreement dated February 18, 2022, and a first amendment to that purchase and sale agreement dated April 21, 2022 (collectively, the "purchase and sale agreement"), PEL acquired certain oil and gas assets from Strata Energy Holdings and its affiliates. Before the transactions "contemplated by the [purchase and sale agreement]" closed, Black Bayou was responsible for operating the leases and wells as well as the accounting and land administration for such operations. At the closing, PEL and Black Bayou executed

a transition services agreement, under which Black Bayou agreed to continue providing certain services for an additional sixty-day period in exchange for a $75,000 monthly service fee.

According to PEL, Black Bayou failed to fulfill its promises under the transition services agreement, in that it failed to provide PEL with "its share of the proceeds from the sale of hydrocarbons produced from the [a]cquired [a]ssets during April 2022" as well as revenues due from "certain non-operating interests included among the acquired assets—a sum that PEL believe[d] [to be in excess of] $1 million." PEL also alleged that Black Bayou "breached its obligation to assist in good faith with the orderly transition and transfer of the [a]cquired [a]ssets by refusing to turn over records that PEL need[ed] to operate its [a]cquired [a]ssets going forward."

Based on these allegations, PEL brought claims against Black Bayou for breach of contract, violations of the Texas Theft Liability Act,[2] and conversion. PEL also sought a temporary injunction "to compel Black Bayou to deliver to PEL copies of its [r]ecords."[3]

---

[2]     *See id.* § 134.001– .005.

[3]     PEL also brought a breach-of-contract claim against Strata Energy Holdings and Burtonvic.

3

Black Bayou then filed an counterclaim and cross-claim and Strata GP filed an original plea in intervention. In the original counterclaim and cross-claim and plea in intervention, Strata GP explained that Strata Energy Holdings was "owned 98% by Strata LLC and 2% by Strata GP." Its alleged interest in the PEL-Strata Energy Holdings transaction was grounded in the Limited Liability Company Agreement of Strata Energy Holdings (the "company agreement"), a copy of which was attached to the pleading. According to Strata GP, the company agreement "included both [d]rag-[a]long and [t]ag-[a]long rights that vested" in Strata GP "when there was a sale of all or substantially all of the [c]ompany's assets." At the same time the company agreement was executed, Strata Energy Holdings "entered into a [m]anagement [s]ervices [a]greement with Black Bayou." Thus, Strata GP alleged, it was a party to the management services agreement with Black Bayou.

Black Bayou and Strata GP maintained that the management services agreement, a copy of which was attached to the pleading, provided for Black Bayou to manage the acquired assets for an initial term of five years and it "automatically renew[ed] each year for a period of one year unless terminated by written notice at least [thirty] days prior to its termination." The management services agreement defined certain events that would terminate the agreement before the end of the initial five-year term, and Black Bayou and Strata GP alleged that "none of th[o]se

4

events [had] occurred," so the management services agreement was still in effect "until at least November 2024."

Further, according to Strata GP and Black Bayou, the management services agreement defined "[o]perator [o]wned [i]nformation," and provided that such information was "confidential" and "exclusively belong[ed] to the [o]perator." At the time of the counterclaim, cross-claim, and plea in intervention's filing, "PEL [wa]s in possession of the [o]perator [o]wned [i]nformation." Black Bayou had asked PEL to return such information, but "the information ha[d] not been returned."

According to Strata GP, even though "[e]vents that triggered the tag-along rights occurred," Strata Energy Holdings, with Burtonvic's and PEL's "assistance, structured the [purchase and sale agreement] so as to" "prevent Strata GP from being able to exercise its [t]ag-[a]long rights" and "avoid paying Strata GP its additional interest." And "Burtonvic agreed to be jointly and severally liable to PEL for [Strata Energy Holdings'] obligations under the [purchase and sale agreement]."

Based on these allegations, Strata GP brought a claim against Strata Energy Holdings for breach of the company agreement and for declaratory relief. Black Bayou brought a cross-claim against Strata Energy Holdings for breach of the management services agreement and for declaratory relief. And Black Bayou and Strata GP brought claims, cross-claims, and counterclaims for conspiracy, aiding

5

and abetting, and tortious interference with contract against PEL, Strata Energy Holdings, and Burtonvic.

In response to Black Bayou's and Strata GP's pleading, Strata Energy Holdings and Burtonvic filed a special appearance. In their amended special appearance, Strata Energy Holdings and Burtonvic "challenge[d] the [trial court's] personal[] jurisdiction over them" as "to all claims that may be asserted against them by other parties to this suit other than the breach of contract claim asserted by PEL." Pertinent here, Strata Energy Holdings and Burtonvic asserted that the trial court did not have personal jurisdiction over them "with regard to the cross-claims asserted by [Black Bayou] and the intervention claims asserted by [Strata GP]."

In support of their amended special appearance, Strata Energy Holdings and Burtonvic observed that "[n]either Black Bayou nor Strata GP . . . [had] alleged any specific jurisdictional facts to establish personal jurisdiction" in Texas "over [Strata Energy Holdings] or Burtonvic as to their asserted claims." Instead, Black Bayou and Strata GP relied solely "on the [purchase and sale agreement] under which PEL" brought suit. According to Strata Energy Holdings and Burtonvic, the purchase and sale agreement contained "an agreement to jurisdiction in Harris County, Texas that effectively waive[d] any personal jurisdiction challenge for a claim under [the purchase and sale agreement]," but the purchase and sale agreement did "not apply to the claims asserted by any other parties [in] th[e] suit."

6

Strata Energy Holdings and Burtonvic further asserted that the conduct alleged against them by Black Bayou and Strata GP "d[id] not justify specific jurisdiction because none of it was directed towards Texas." They attached to their amended special appearance declarations executed by William Henrich, the manager of both Strata Energy Holdings and Burtonvic, in which he stated that Strata Energy Holdings and Burtonvic "ha[d] never done in business in Texas, ha[d] never owned any property in Texas, and ha[d] never sought any business from Texas."

Additionally, Strata Energy Holdings and Burtonvic pointed out that the company agreement and the management services agreement—"the contracts that form[ed] the basis for Black Bayou['s] and Strata GP's claims" and cross-claims against Strata Energy Holdings and Burtonvic, which Black Bayou and Strata GP had attached to their pleading—"involved performance related to mineral interests in Louisiana" and expressly mandated "exclusive jurisdiction in Delaware."[4] Consistent with this assertion, Henrich stated in his declarations that:

---

[4] Section 13.7(b) of the company agreement provided:

> The parties hereto irrevocably submit to the exclusive jurisdiction of the Delaware Chancery Courts located in Wilmington, Delaware, or, if such court shall not have jurisdiction, any federal court of the United States . . . or other Delaware state court located in Wilmington, Delaware, and appropriate appellate courts therefrom, over any claims . . . (1) arising out of or relating in any way to this Agreement . . . .

And section 13.8 of the management services agreement provided: "Sections 13.7(a), (b), (c), and (e) of the [company agreement are] hereby incorporated by reference into this Agreement and shall apply as if fully set forth herein *mutatis mutandis*."

There [was] a [management services agreement] between [Black Bayou] and [Strata Energy Holdings], but that [management services agreement] incorporated provisions from the [company agreement] that mandate[d] Delaware, not Texas, as the exclusive jurisdiction and forum for any disputes. [Strata GP was] a party to the [company agreement] that mandate[d] Delaware, not Texas, as the exclusive jurisdiction and forum for any disputes.

In its response, Black Bayou[5] asserted that the Texas trial court had personal jurisdiction over Strata Energy Holdings and Burtonvic based on the forum selection clause in the first amended purchase and sales agreement entered into between PEL, Strata Energy Holdings, and Burtonvic. The forum selection clause in the first amended purchase and sales agreement provided, with certain exceptions, that:

"all [c]laims or causes of action that may be based upon, arise out of, or relate to this [a]mendment or the [p]urchase [a]greement or the negotiation, execution, or performance of this [a]mendment or the [p]urchase [a]greement shall be governed and construed in accordance with the internal laws of the State of Texas applicable to agreements made and to be performed entirely within such State, without regard to any choice-of-law or conflicts-of-law provision or rule that would cause the application of the [l]aws of any jurisdiction other than the State of Texas . . . .

Black Bayou maintained that "the relationship between Black Bayou, [Strata Energy Holdings], and Burtonvic [wa]s close enough that Black Bayou's enforcement of the forum selection clause would be foreseeable to [Strata Energy Holdings] and

---

[5] The record shows that Strata GP did not join in Black Bayou's response to Strata Energy Holdings' and Burtonvic's amended special appearance, nor did it file a separate response.

8

Burtonvic" and "display[ed] [Strata Energy Holdings], PEL, and Burtonvic's intention to directly benefit Black Bayou."

In their reply to Black Bayou's response, Strata Energy Holdings and Burtonvic observed that "generally, a forum-selection clause may be enforced only by and against a party to the agreement containing the clause." As non-signatories to the purchase and sales agreement, the forum selection clause in that agreement did not apply to them. Further, although the purchase and sales agreement "mention[ed] Black Bayou," it did not identify Black Bayou as a beneficiary. "Instead, it merely ma[de] [Strata Energy Holdings] and Burtonvic separately liable to [PEL] for Black Bayou's performance of obligations under a separate contract between [PEL] and Black Bayou. . . . And the [first amended purchase and sales agreement] d[id] not even mention Strata GP."

Strata Energy Holdings and Burtonvic also found it "notable that Black Bayou and Strata GP's claims [and cross-claims] against [them] [we]re not based on the [first amended purchase and sales agreement] at all, but on separate contracts," which were attached to their pleading. And "Black Bayou and Strata GP ignore[d] the fact" that both of those agreements "ha[d] a forum selection clause requiring claims under those contracts to be brought exclusively in Delaware."

The proposed order granting the special appearance of Strata Energy Holdings and Burtonvic stated that all claims by Black Bayou and Strata GP against Strata

Energy Holdings and Burtonvic were "dismissed based on this [trial] [c]ourt's lack of personal jurisdiction over [Strata Energy Holdings] and [Burtonvic]." The trial court added the following language to the order:

> Further, the [p]arties have fully briefed the issue of the forum selection clause in this matter. The briefing has been included in the special appearance briefing. This Court dismisses on the basis of the forum selection clause as well.

The trial court also stated in the order that "[a]ll dismissals [were] without prejudice," and it signed the order.

### Standard of Review

The existence of personal jurisdiction is a question of law, which must sometimes be preceded by the resolution of underlying factual disputes. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Paul Gillrie Inst., Inc. v. Universal Comput. Consulting, Ltd.*, 183 S.W.3d 755, 759 (Tex. App.— Houston [1st Dist.] 2005, no pet.). When the underlying facts are undisputed or otherwise established, we review a trial court's denial of a special appearance de novo. *Paul Gillrie Inst.*, 183 S.W.3d at 759. Where, as here, a trial court does not issue findings of fact or conclusions of law with its special-appearance ruling, all fact findings necessary to support the judgment and that are supported by the evidence are implied. *Marchand*, 83 S.W.3d at 795; *Paul Gillrie Inst.*, 183 S.W.3d at 759.

A trial court determines a "special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." TEX. R. CIV. P. 120a(3). A single basis for personal jurisdiction is sufficient to confer jurisdiction over a nonresident defendant. *See Citrin Holdings, LLC v. Minnis*, 305 S.W.3d 269, 279 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Am. Type Culture Collection v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002); *Paul Gillrie Inst.*, 183 S.W.3d at 759. The burden of proof then shifts to the nonresident defendant to negate all the bases of jurisdiction alleged by the plaintiff. *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985); *see also Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010) ("Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading.").

Appellate review of a ruling on a special appearance typically requires that this Court analyze whether a defendant has purposefully established minimum contacts with Texas, giving rise to either specific or general jurisdiction over the defendant, and whether the exercising jurisdiction would comport with fair play and substantial justice. *Guam Indus. Servs., Inc. v. Dresser–Rand Co.*, 514 S.W.3d 828,

11

833 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Here, though, Strata Energy Holdings and Burtonvic asserted in their amended special appearance that the agreements that formed the basis for the claims and cross-claims asserted by Black Bayou and Strata GP against them "specifically call[ed] for exclusive jurisdiction in Delaware."

Our analysis, then, must include consideration of whether Black Bayou and Strata GP contractually consented to jurisdiction in another forum. *See Guam Indus. Servs.*, 514 S.W.3d at 833. If they did, then the due-process and minimum-contacts analysis is unnecessary. *See In re Fisher*, 433 S.W.3d 523, 532 (Tex. 2014) ("[A] contractual 'consent-to-jurisdiction clause' subjects a party to personal jurisdiction, making an analysis of that party's contacts with the forum for personal jurisdiction purposes unnecessary."); *Aggreko, LLC v. Bronxcare Health Sys.*, No. 01-22-00052-CV, 2024 WL 234409, at *4 (Tex. App.—Houston [1st Dist.] Jan. 23, 2024, no pet.) (mem. op.); *Guam Indus. Servs.*, 514 S.W.3d at 833.

### Special Appearance

In their first issue, Black Bayou and Strata GP argue that the trial court erred in granting the special appearance because Strata Energy Holdings and Burtonvic waived their special appearance by generally appearing when they answered PEL's claims against them. In their second issue, Black Bayou and Strata GP argue that the trial court erred in granting the special appearance because the forum selection

12

clause in the purchase and sale agreement created personal jurisdiction over Black Bayou's cross-claims and Strata GP's claims asserted by intervention.

Initially, we note that Strata GP failed to file or join in a response to Strata Energy Holdings' and Burtonvic's special appearance in the trial court. To preserve a complaint for appellate review, Texas Rule of Appellate Procedure 33.1 requires a party to first make a complaint to the trial court by "a timely request, objection, or motion." TEX. R. APP. P. 33 .1(a)(1); *see also Valdez v. Valdez*, 930 S.W.2d 725, 728 (Tex. App.—Houston [1st Dist.] 1996, no writ) (because party never complained to the trial court, he never gave trial court opportunity to correct alleged error). If a party fails to do this, error is not preserved, and the complaint is waived. *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991); *see also Humble Surgical Hosp., LLC v. Davis*, 542 S.W.3d 12, 21 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ("Rule 33.1 requires the appealing party to adequately raise issues before the trial court to give the trial court notice of [the party's] complaint.").

We also note that, in any event, Black Bayou and Strata GP do not challenge the trial court's dismissal of their claims and cross-claims against Strata Energy Holdings and Burtonvic based on the forum selection clauses in the company agreement and the management services agreement, respectively. Generally, appellants must challenge all independent bases that fully support a complained-of ruling or judgment. *Britton v. Tex. Dep't of Crim. Justice*, 95 S.W.3d 676, 681 (Tex.

13

App.—Houston [1st Dist.] 2002, no pet.); *see also Oliphant Fin. LLC v. Angiano*, 295 S.W.3d 422, 423 (Tex. App.—Dallas 2009, no pet.) ("An appellant must attack all independent bases or grounds that fully support a complained of ruling or judgment."). If they do not, then this Court must affirm the ruling or judgment. *Britton*, 95 S.W.3d at 681; *see also Akhtar v. Leawood HOA, Inc.*, 525 S.W.3d 814, 819 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (claimed error in challenged order is rendered harmless where unchallenged, alternate basis supports appealed order). The reasoning is that if an independent ground fully supports the complained-of ruling or judgment, but the appellants assign no error to that independent ground, then we must accept the validity of that unchallenged independent ground. *City of Houston v. Waldhoff*, No. 01-22-00825-CV, 2023 WL 5110981, at *4 (Tex. App.—Houston [1st Dist.] Aug. 10, 2023, no pet.) (mem. op.).

After Strata Energy Holdings and Burtonvic raised the forum selection clause issue in their appellees' brief, Black Bayou and Strata GP argued about its applicability in their reply brief. But an issue raised for the first time in a reply brief is ordinarily waived and need not be considered by this Court. *McAlester Fuel Co. v. Smith Int'l, Inc.*, 257 S.W.3d 732, 737 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *N.P. v. Methodist Hosp.*, 190 S.W.3d 217, 225 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); *see also* TEX. R. APP. P. 38.1(f), (i) (appellants' brief must

14

state all issues or points presented for review and make clear and concise argument for the contentions made).

Based on the foregoing, we conclude that Black Bayou and Strata GP failed to challenge an independent ground supporting the trial court's order dismissing Black Bayou's and Strata GP's claims and cross-claims. Thus, we hold that the trial court did not err in dismissing the claims and cross-claims against Strata Energy Holdings and Burtonvic.

We overrule Black Bayou's and Strata GP's first and second issues.

**Conclusion**

We affirm the judgment of the trial court.

Julie Countiss
Justice

Panel consists of Chief Justice Adams and Justices Hightower and Countiss.