Opinion issued May 28, 2026



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-24-00398-CV

_____

**FREEDOM WESTWOOD, LLC, Appellant**

**V.**

**FLAGSHIP CAPITAL PARTNERS EQUITY OPPORTUNITY FUND, LP. AND FLAGSHIP CAPITAL GP II, LLC, INDIVIDUALLY AND DERIVITAVELY ON BEHALF OF FLAGSHIP WESTWOOD, LLC, A DELAWARE LIMITED PARTNERSHIP, Appellees**

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Case No. 2023-84760**

## MEMORANDUM OPINION

The main issue in this interlocutory appeal is whether the trial court has personal jurisdiction over a nonresident defendant—Freedom Westwood, LLC—based on certain forum-selection clauses. Because we answer that question in the

negative, we reverse the trial court's order denying Freedom Westwood, LLC's special appearance and render judgment dismissing appellees' claims against it.

## Background

The dispute in this case centers around an apartment renovation project called Westwood Estates in West Columbia, South Carolina (the Property). The Property is owned by Sureste Westwood, LLC, which was formed with the sole purpose of purchasing the Property and to otherwise "operate, lease, manage, hold, for investment, exchange, sell, and dispose of the Property." But Sureste Westwood is just the top of the ownership structure—underneath it are several additional layers of entities. To better illustrate the ownership structure, we include the following graphic taken from the briefing in this case:



At some point, the relationship amongst various entities involved in renovation of the Property broke down. Flagship Capital[1] sued Freedom Westwood, LLC and several other defendants in Harris County for violations of the Texas Securities Act, fraud, and breach of the Limited Liability Company Agreement of Sureste Westwood Holdings, LLC, among other things.

Freedom Westwood, a Delaware LLC, filed a special appearance challenging the trial court's personal jurisdiction over it.[2] According to Flagship Capital, Freedom Westwood consented to jurisdiction in Texas based on forum-selection clauses in the Sureste Westwood Holdings LLC Agreement and in S/F Westwood, LLC's Operating Agreement. Flagship Capital also argued that Freedom Westwood was bound by the forum-selection clauses based on the doctrine of direct-benefits estoppel. The trial court denied Freedom Westwood's special appearance. This interlocutory appeal followed.[3]

**Personal Jurisdiction**

Freedom Westwood argues that the trial court erred in denying its special appearance for several reasons. *First*, it argues that it is not a party to the Sureste

---

[1] Appellees here include Flagship Capital Partners Equity Opportunity Fund LP. and Flagship Capital GP II, LLC, individually and derivatively on behalf of Flagship Westwood, LLC. We refer to the appellees collectively as "Flagship Capital."

[2] *See* TEX. R. CIV. P. 120a.

[3] *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7).

Westwood Holdings LLC Agreement and therefore cannot be bound by the forum-selection clause in that agreement. *Second*, it argues that, although it signed the S/F Westwood Operating Agreement, the forum-selection clause in that agreement applies only to the "parties" to that agreement—of which Flagship Capital is not one. *Third*, it argues that the two operating agreements cannot be read together as if they constitute a single transaction to bind it to the forum-selection clauses in the various agreements. And *fourth*, it argues that direct-benefits estoppel is a defensive theory that does not apply to create personal jurisdiction over it.[4]

We address each argument in turn.

---

[4] Freedom Westwood also challenged specific jurisdiction in its special appearance, to which Flagship Capital responded, and it raises a minimum contacts specific jurisdiction argument on appeal. But at the hearing, Flagship Capital appeared to abandon this argument as a basis for personal jurisdiction over Freedom Westwood, focusing solely on the forum-selection clause. And Flagship Capital does not address specific jurisdiction on appeal. Accordingly, specific jurisdiction is not at issue in this appeal.

But, even if it was, the only contacts Flagship Capital alleged Freedom Westwood had with Texas were "hundreds of phone calls, texts, and email discussions with Flagship, Texas residents" regarding acquisition, financing, construction, and renovation of the Property. Telephone calls and other communications with people in Texas, standing alone, do not establish minimum contacts. *See Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 560 (Tex. 2018). And, even if they did, "a proper minimum-contacts analysis looks to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there." *Id.* at 561. As Flagship Capital concedes in its response to the special appearance, all of these communications concerned the Property—which indisputably is in South Carolina. We thus conclude that Freedom Westwood's contacts with Texas would be insufficient to confer specific jurisdiction over it as to Flagship Capital's claims against it.

4

## A.    Standard of Review

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that we review de novo. *See BRP-Rotax GmbH & Co. KG v. Shaik,* 716 S.W.3d 98, 103 (Tex. 2025).  A plaintiff bears the burden of pleading allegations that bring a nonresident defendant within the provisions of the Texas long-arm statute. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002). A nonresident defendant challenging the court's exercise of personal jurisdiction through a special appearance carries the burden of negating those allegations. *Id.*

## B.    Applicable Law

Typically, review of a ruling on a special appearance requires an analysis of whether a defendant has purposefully established minimum contacts with Texas, giving rise to either specific or general jurisdiction over the defendant, and whether the assertion of jurisdiction comports with fair play and substantial justice. *See Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013); *Guam Indus. Servs., Inc. v. Dresser-Rand Co.*, 514 S.W.3d 828, 833 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

However, if a party contractually consents to jurisdiction in a particular forum, then the due-process and minimum-contacts analysis is unnecessary. *See In re Fisher*, 433 S.W.3d 523, 532 (Tex. 2014) (orig. proceeding) ("[A] contractual 'consent-to-jurisdiction clause' subjects a party to personal jurisdiction, making an

5

analysis of that party's contacts with the forum for personal jurisdiction purposes unnecessary."); *Guam Indus. Servs.* 514 S.W.3d at 833

Thus, contractual forum-selection clauses allow contracting parties to "preselect the jurisdiction for dispute resolution." *Rieder v. Woods*, 603 S.W.3d 86, 93 (Tex. 2020) (quoting *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 436 (Tex. 2017)). Such clauses are presumptively valid and constitute consent to jurisdiction in the agreed forum. *Id.*

Generally, "a forum-selection clause may be enforced only by and against a party to the agreement containing the clause." *Pinto Tech. Ventures*, 526 S.W.3d at 443. "Because forum-selection clauses are creatures of contract, the circumstances in which nonsignatories can be bound to a forum-selection clause are rare." *Id.* The extent to which nonsignatories may resist or enforce forum-selection clauses is thus determined by reference to "common principles of contract and agency law and the parties' chosen language[.]" *Id.* at 432; *see also Rieder*, 603 S.W.3d at 101.

C. **Analysis**

1. **Limited Liability Company Agreement of Sureste Westwood Holdings, LLC**

We first consider whether Flagship Capital, as a signatory, may enforce the forum-selection clause in the Limited Liability Company Agreement of Sureste Westwood Holdings, LLC against Freedom Westwood—a nonsignatory.

6

As depicted above, Sureste Westwood, LLC's sole member is Sureste Westwood Holdings. Sureste Westwood Holdings was formed "for the primary purpose of holding 100% of the equity interests of" Sureste Westwood. Sureste Westwood Holdings' members include S/F Westwood, LLC and Flagship Westwood, LLC—one of the appellees here. The Sureste Westwood Holdings LLC Agreement contains the following forum-selection clause:

> The venue for resolving any dispute arising under this Agreement may be brought only in Harris County, Texas or in Columbia, Richland County, South Carolina . . . . The Members and Managers hereby consent to *in personam* jurisdiction of federal or state courts in both Harris County, Texas and Richland County, South Carolina.

But the only parties to the Sureste Westwood Holdings LLC Agreement are S/F Westwood, LLC and Flagship Westwood, LLC. Freedom Westwood—although a member of S/F Westwood—is not a member or manager of Sureste Westwood Holdings and did not sign that LLC Agreement in any capacity.

It is a "well-established legal principle that limited liability companies and their obligations are legally distinct from their members and managers." *See Rieder*, 603 S.W.3d at 98. Flagship Capital has made no argument[5] as to why we should disregard this "well-established legal principle" to hold Freedom Westwood to a

---

[5] Flagship Capital does make "an entirely secondary argument" that, assuming Freedom Westwood did not sign an agreement containing a forum-selection clause, it could still be bound as a nonsignatory pursuant to the doctrine of direct-benefits estoppel. We consider that "secondary" argument below.

forum-selection clause in an agreement signed only by S/F Westwood. And we decline to do so. *See id.*

### 2. S/F Westwood Operating Agreement

We next consider whether Flagship Capital, as a nonsignatory, may enforce the forum-selection clause in the S/F Westwood Operating Agreement against Freedom Westwood, a signatory.

S/F Westwood's sole purpose is to "acquire, own, hold, manage, and maintain 52.47% of the membership interests" of Sureste Westwood Holdings. S/F Westwood's Class A members include, among others, Freedom Westwood, LLC— the appellant in this case. S/F Westwood's Operating Agreement also contains a forum-selection clause that in turn incorporates the forum-selection clause from the Sureste Westwood Holdings LLC Agreement:

> In the event that any controversy or claim arises between the parties relating to the Property or the Limited Liability Company Agreement of Sureste Westwood Holdings, LLC, then the venue and dispute resolution provision in the Limited Liability Company Agreement of Sureste Westwood Holdings, LLC shall control.

Flagship Capital thus contends that Freedom Westwood consented to personal jurisdiction in Harris County by virtue of this clause.

But as Freedom Westwood points out, the only parties to the S/F Westwood Operating Agreement are Freedom Westwood, Sureste Properties, LP, and IronOak Residential, LLC. Flagship Capital is not a party to the S/F Westwood Operating

8

Agreement. Again, Flagship Capital makes no attempt to explain why it—as a nonsignatory—should be permitted to enforce the forum-selection clause in this agreement against Freedom Westwood. *See Pinto Tech. Ventures*, 526 S.W.3d at 443 ("As a general proposition, a forum-selection clause may be enforced *only by* and against *a party to the agreement containing the clause*." (emphasis added)).

And the plain language of the S/F Westwood Operating Agreement expressly disclaims any intent to permit enforcement by nonparties such as Flagship Capital.[6] It provides: "No provision of this Agreement is intended to benefit any party other than the Members, the Managers, and their permitted successors and assigns in the Company, *and no provision hereof shall be enforceable by any other party*." (Emphasis added.)

Interpreting similar language,[7] the Supreme Court of Texas in *Pinto Technology Ventures* held that this type of language "disclaims any intent to extend

---

[6] *See Rieder v. Woods*, 603 S.W.3d 86, 101 (Tex. 2020) (considering language of contract to determine whether nonsignatories may enforce or be bound by forum-selection clause).

[7] The contract at issue in *Pinto Technology Ventures* provided:

> This Agreement . . . shall inure to the benefit of and be binding upon, the successors, permitted assigns, legatees, distributees, legal representatives and heirs of each party and *is not intended to confer upon any person, other than the parties and their permitted successors and assigns, any rights or remedies hereunder*.

*Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 445 (Tex. 2017).

the contract's benefits to nonparties" and that allowing such nonparties to enforce the forum-selection clause "would contravene the parties' expressed intent and is, thus, impermissible." 526 S.W.3d at 445. Based on the language of the S/F Westwood Operating Agreement, we similarly conclude that nonparty Flagship Capital may not enforce the operating agreement's forum-selection clause against Freedom Westwood.

### 3. Single Transaction

We next consider whether the Sureste Westwood Holdings LLC Agreement and the S/F Westwood Operating Agreement may be read together as part of a single transaction. Flagship Capital argues that because multiple documents—including these two agreements—were executed in an "essentially contemporaneously time frame" and relate to the renovation of the Property, in the event that any one of them does not directly bind Freedom Westwood to the personal jurisdiction of courts in Harris County, they should be read together as a single document to do so. We disagree.

It is true that "under appropriate circumstances, instruments pertaining to the same transaction may be read together to ascertain the parties' intent, even if the parties executed the instruments at different times and the instruments do not expressly refer to each other." *Rieder*, 603 S.W.3d at 94 (quotations omitted). But the Supreme Court of Texas has cautioned that "tethering documents to each other

10

is simply a device for ascertaining and giving effect to the intention of the parties and cannot be applied arbitrarily and without regard to the realities of the situation." *Id.* at 95 (quotations omitted). Reviewing the language of both agreements at issue here, we hold that the Sureste Westwood Holdings LLC Agreement and the S/F Westwood Operating Agreement are not components of a single, unified instrument but are instead two independent agreements.

For instance, as explained above, the agreements each have different parties and different purposes.[8] Additionally, each agreement contains a merger clause.[9]

Finally, the agreements evidence the creation of two separate legal entities. S/F Westwood's members, including Freedom Westwood, chose to form a separate entity—a limited liability company—before forming Sureste Westwood Holdings with Flagship Capital. Had Freedom Westwood and the other members of S/F Westwood intended to bind themselves directly to the Sureste Westwood Holdings LLC Agreement, they could have done so without forming S/F Westwood. But they chose not to do so.[10]

---

[8]     *Rieder*, 603 S.W.3d at 95–96 (concluding that agreements, which had different parties and purposes, reflected parties' intent to form two separate entities).

[9]     *See id.* at 97 ("Here, the existence of a merger clause in both the Cadbury Agreement and the Series Agreement confirms the agreements are separate and distinct from one another and the parties did not intend otherwise.").

[10]     *See id.* at 98 (concluding that parties' efforts "to limit their liability exposure through separately formed LLCs" manifested intent that entities and their members "would remain distinct from one another in the eyes of the law").

11

Accordingly, we conclude that the Sureste Westwood Holdings LLC Agreement and the S/F Westwood Operating Agreement are not components of a single document, but rather two separate and independent agreements. *See id.* at 95–98.

### 4. Direct-Benefits Estoppel

Finally, we consider whether Freedom Westwood, as a nonsignatory to the Sureste Westwood Holdings LLC Agreement, should be bound by the forum-selection clause in that agreement based on the theory of direct-benefits estoppel.

Direct-benefits estoppel applies when a nonsignatory "knowingly exploits" an agreement containing a forum-selection clause. *See Carlile Bancshares, Inc. v. Armstrong*, No. 02-14-00014-CV, 2014 WL 3891658, at *7 (Tex. App.—Fort Worth Aug. 7, 2014, no pet.) (mem. op.). And it has been applied to enforce forum-selection clauses against nonsignatories seeking to sue on the contract containing the forum-selection clause. *See id.* at *8.

But direct-benefits estoppel is "'seriously consider[ed]' only when 'the nonsignatory had brought suit against a signatory premised in part upon the agreement.'" *Id.* (quoting *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 362 (5th Cir. 2003)). "In other words, the party position of the nonsignatory in the lawsuit—plaintiff or defendant—is an important distinction in deciding whether estoppel can bind a nonsignatory to a contract's terms." *Id.*

Here, it is undisputed that Flagship Capital—signatory plaintiff—sued Freedom Westwood—nonsignatory defendant—under the Sureste Westwood Holdings LLC Agreement. Not the other way around. Thus, Freedom Westwood did not "knowingly exploit" this agreement to the degree required for direct-benefits estoppel. *See id.* ("Indeed, estoppel is a defensive theory, not a theory by which a signatory plaintiff may hold a nonsignatory defendant to the terms of a contract the nonsignatory defendant is not seeking to enforce.").

It is true that "a nonparty may seek or obtain direct benefits from a contract by means other than a lawsuit,"[11] including by "knowingly seeking and obtaining direct and substantial benefits from that contract." *Id.* But Flagship Capital does not identify any "direct and substantial benefits" that Freedom Westwood has sought and obtained from the Sureste Westwood Holdings LLC Agreement.

Instead, it makes only a general argument that Freedom Westwood participated in the renovation of the Property and its "rights, duties and interests in the Project flow from and are defined by the various agreements." But this vague allegation standing alone is insufficient to meet Flagship Capital's burden to prove that direct-benefits estoppel applies here—such that nonsignatory Freedom Westwood should be bound by the forum-selection clause in the Sureste Westwood

---

[11] *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005) (orig. proceeding).

Holdings LLC Agreement. *See id.* at *7 (explaining that plaintiffs bore burden to identify and prove theory under which nonsignatories could be bound by forum-selection clause).[12]

## Conclusion

Accordingly, for all the reasons above, we hold that the forum-selection clauses are not enforceable against Freedom Westwood and, therefore, the trial court lacked personal jurisdiction over Freedom Westwood. We therefore reverse the trial court's order denying Freedom Westwood's special appearance and render judgment dismissing Flagship Capital's claims against it.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Gunn and Johnson.

---

[12] *See also CNOOC Se. Asia Ltd. v. Paladin Res. (SUNDA) Ltd.*, 222 S.W.3d 889, 895 (Tex. App.—Dallas 2007, pet. denied) ("When a party seeks to enforce a forum-selection clause against a nonsignatory to the contract containing the forum-selection clause, that party bears the burden to prove the theory upon which it relies to bind the nonsignatory to the contract.").